# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | LA CV17-02730 JAK<br>LA BK15-27769 ER | Date | October 20, 2017 |
|---|---|---|---|
| Title | In re Crystal Waterfalls, LLC dba Park Inn By Radisson:<br>B3 Capital Venture, LLC v. Crystal Waterfalls, LLC | | |

---

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE APPEAL FROM BANKRUPTCY COURT (DKT. 1)

ORDER RE APPELLANT'S REQUEST TO STRIKE APPELLEE'S REPLY BRIEF (DKT. 27)   JS-6

## I. Introduction

On November 19, 2015, Crystal Waterfalls, LLC, doing business as Park Inn by Radisson ("Debtor" or "Appellee"), filed a Chapter 11 Petition ("Petition") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). Dkt. 10-3, Excerpts of Record Volume 3 ("R3") at 650 (Docket Sheet of Trial Court). On October 31, 2016, B3 Capital Ventures, LLC ("Appellant") filed a proof of claim in the Chapter 11 proceedings. Excerpts of Record Volume 1 ("R1") at 7-9. In December 2016, Debtor moved to disallow in part Appellant's proof of claim on the grounds that it was not supported by sufficient evidence. R1 40-52. Debtor also argued that Appellant could not recover default interest on certain claims. R1 47-51.

On February 16, 2017, the Bankruptcy Court issued an order that rejected Appellant's claim for default interest for the entire period for which it was sought. R3 551-568. The order also denied certain of the attorney's fees and costs requested by Appellant. R3 554-555. In response, on March 2, 2017, Appellant brought a motion to modify the February 16, 2017 order ("Motion to Reconsider"). Appellant sought awards of the default interest that had been disallowed and of a greater amount of the requested attorney's fees and costs. R3 575-601. Appellant argued that if this relief were not granted, manifest injustice would result because the February 16, 2017 order reflected errors of fact and law. R3 578-593. Debtor did not oppose the motion. R3 716-718. In an order dated March 27, 2017 the Bankruptcy Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-02730 JAK<br>LA BK15-27769 ER | Date | October 20, 2017 |
|---|---|---|---|
| Title | In re Crystal Waterfalls, LLC dba Park Inn By Radisson:<br>B3 Capital Venture, LLC v. Crystal Waterfalls, LLC | | |

denied the motion in its entirety. R3 611-625. Appellant appealed both orders on March 27, 2017, and on April 7, 2017, filed a notice of appeal. Dkt. 1.

On June 12, 2017, Appellant filed its opening brief. Dkt. 10. Appellee filed its opposition brief on July 17, 2017. Dkt. 15. Appellant filed its reply brief on July 27, 2017. Dkt. 25. Appellee also filed a supplemental reply brief on July 27, 2017. Dkt. 24.[1]

For the reasons stated in this order, the Bankruptcy Court orders are **AFFIRMED**.

## II. Factual and Procedural Background

### A. Loan and Default

Debtor is a California company. Lucy Gao ("Gao") is its principal owner and manager. R1 8, 44. In September 2011, Debtor purchased certain real property in California ("Property"). R1 44. As part of the purchase, Debtor entered a Business Loan Agreement and Note ("Loan Agreement") with First Commercial Bank ("FCB"). R1 7-12; 130-132. FCB is not a party in these proceedings. The promissory note that was part of that agreement ("Note") was for $7 million and was payable to FCB. *Id.* Gao personally guaranteed the Note. R1 8. The terms of the Note required 59 regular monthly payments of $44,392, with a final payment in the estimated amount of $6,323,263.01. R1 53. The Note provided for a variable rate of interest with a floor of 5.75% ("Contract Rate"). R1 14-15. With respect to interest due in the event of a default, the Note provided that "[u]pon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding an additional 5.000 percentage point margin [to the existing interest rate]" ("Default Rate"). R1 14. The Note provided that all payments made by the Debtor would be applied first to interest and costs, and then to principal. *Id.*

Debtor and FCB also entered a commercial security agreement in connection with the Loan Agreement. Under its terms, Debtor granted FCB a blanket security interest in all of Debtor's assets. In October 2011, FCB recorded a first priority deed of trust ("Deed of Trust") with respect to the Property. R1 19-30. Under its terms, Debtor was required to make timely payment of all taxes on the Property. R1 21.

In December 2011, Debtor failed to make payment of the property taxes then due on the Property. R1 144, 223. Debtor also failed to make payment of such taxes that subsequently became due. *See id.*

---

[1] Appellant filed a request to strike Appellee's July 27, 2017 reply brief for exceeding the scope of the June 21, 2017 Order and seeking to present a legal argument that was not presented to the Bankruptcy Court. Dkt. 27. Appellee opposed these requests and sought the imposition of sanctions. Dkt. 28. Because that filing exceeded the scope of the June 21, 2017 Order, it is stricken as to those matters. Moreover, the arguments presented, even if considered on their merits, would not change the outcome of this Order. The request for sanctions is denied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-02730 JAK<br>LA BK15-27769 ER | | Date | October 20, 2017 |
|---|---|---|---|---|

| Title | In re Crystal Waterfalls, LLC dba Park Inn By Radisson:<br>B3 Capital Venture, LLC v. Crystal Waterfalls, LLC |
|---|---|

Appellant asserts that Debtor's failure to make these payments constituted a default of the Loan Agreement. Dkt. 10 at 15. However, FCB did not declare Debtor in default of the Loan Agreement at the time that the property taxes were not paid. Although Debtor failed to pay property taxes, it continued to make its regular monthly payments to FCB pursuant to the Loan Agreement. FCB did not include any accrued default interest associated with the non-payment of property taxes in its accounting as to those payments when they were made. R1 216-217.

In December 2014, Debtor once again did not pay property taxes that were then due. *See* R1 143, 223. On December 17, 2014, FCB recorded a "notice of default and election to sell under deed of trust," in which it cited "[p]roperty taxes are not current" as the basis for the claimed default. R1 219-220. This was the first time that FCB deemed Debtor in default of its obligations under the Loan Agreement. In August 2015, a corresponding Notice of Trustee's Sale was recorded, with the sale scheduled for November 20, 2015. R3 612.

In October 2015, FCB provided Gao with an estimate of $6,966,801.73 as the amount that would be due under Loan Agreement as of November 2, 2015. R1 54, 56-58. This calculation did not include any interest calculated by using the Default Rate. *Id*. The estimate also included the statement that it was a "preliminary figure for your reference only, and which may differ [from] the pay-off demand." *Id*. However, FCB never sought to recover interest at the Default Rate.

On November 17, 2015, Appellant purchased the Note from FCB, and became the assignee of the Deed of Trust. R1 135, 200-214. At the time that Appellant purchased the Note, it also paid $998,382.12 to bring the property taxes current. R1 135. This was the then outstanding amount of property taxes owed by the Debtor with respect to the Property. *Id.*

    **B.    Bankruptcy Proceedings**

The October 31, 2016 proof of claim filed by Appellant was in the amount of $9,689,902.46. This figure included the pre-Petition outstanding principal ($6,538,796.37), pre-Petition unpaid accrued default interest ($1,545,526.12), and post-Petition unpaid accrued default interest ($353,630.11). R1 4. The past due interest was calculated starting in December 2011, which is when Debtor first failed to pay property taxes. The calculation was based on the Default Rate. R1 18, 124. Appellant also sought to recover its attorney's fees, expenses, and costs incurred through mid-October 2016 in the bankruptcy proceeding and breach of guaranty matter. R1 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-02730 JAK<br>LA BK15-27769 ER | | Date | October 20, 2017 |
|---|---|---|---|---|
| Title | In re Crystal Waterfalls, LLC dba Park Inn By Radisson:<br>B3 Capital Venture, LLC v. Crystal Waterfalls, LLC | | | |

On December 14, 2016, Debtor moved to disallow a portion of Appellant's proof of claim ("Motion to Disallow" (R1 40-52)). Debtor argued that Appellant could not claim increased default interest from December 2011, because this was contrary to the representations of FCB, which had not sought default interest, and was not supported by sufficient evidence. *Id*.

On January 16, 2017, Appellant filed an opposition to the Motion to Disallow. R1 127-141. It argued that Debtor had defaulted on the loan in December 2011 – not December 2014 – because the Real Property Tax Statement for the Property showed that the taxes for the Property due on December 12, 2011 had not been paid. R1 143-44. From this Appellant argued that the Loan Agreement allowed for the retroactive collection of interest at an increased rate from December 2011. *Id*. Appellant argued that it was "not required to adhere to [FCB's] internal accounting" of interest owed. R1 139 n.2.

Appellant also filed an amended proof of claim, in which it included its lender in connection with the loan purchase as a joint payee of the claim. The amended claim also updated the original proof of claim as to interest and attorney's fees and costs through December 31, 2016. R2 320-324. Appellant also submitted invoices that supported those amounts. R2 225-319.

Debtor replied on January 18, 2017. R2 365-383. Debtor argued that the December 2011 failure to pay property taxes did not constitute a default of the Loan. *Id*. The Debtor also argued that FCB had waived any right to collect default interest by failing to demand its payment. Consequently, the Debtor claimed that Appellant was without the authority to collect it as a successor to FCB. *Id*. The waiver arguments were premised on when FCB declared a default, and on certain statements by FCB about the amount of interest owed that did not apply the Default Rate. R1 56-58. To support these positions, Debtor offered the Purchase Sale Agreement ("PSA") between FCB and Appellant. It states the claimed amount of the accrued, unpaid interest that is calculated based on a December 2014 default date. R2 372-373. Debtor also argued that the Bankruptcy Court should disregard Appellant's Amended Proof of Claim for the following reasons: (i) it was not filed until after Debtor objected to the original claim (R2 367-370); (ii) certain fees that were incurred in connection with the breach of guaranty action were unreasonable (R2 374-375); and (iii) Debtor needed more time to complete its review of all fee statements and invoices submitted by Appellant. R2 375-376.

On January 25, 2017, the Bankruptcy Court conduced a hearing on the Motion to Disallow. R3 710. After the hearing, it issued an amended, tentative ruling. It stated that Appellant's claim of default interest for the time period before Appellant held the promissory note would be disallowed. R2 452-462. The tentative ruling also stated that, because Appellant had failed timely to file its response to the Motion to Disallow, Debtor had not been provided with an adequate opportunity to address Appellant's claim for additional post-Petition collection costs and attorney's fees. Therefore, Debtor was permitted to file a Supplemental Reply regarding on these issues. *Id*.; *see also* R3 472-550 ("Supplemental Reply").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# CIVIL MINUTES – GENERAL

| Case No. | LA CV17-02730 JAK<br>LA BK15-27769 ER | | Date | October 20, 2017 |
|---|---|---|---|---|
| Title | In re Crystal Waterfalls, LLC dba Park Inn By Radisson:<br>B3 Capital Venture, LLC v. Crystal Waterfalls, LLC | | | |

On February 16, 2017, the Bankruptcy Court issued a final ruling on the Motion to Disallow. R3 551-570. It determined that Appellant could not collect default interest for the period prior to its ownership of the Note. R3 555-556. The basis for this finding was that FCB had waived its right to enforce the default provisions of the Business Loan Agreement and the Note. R3 564-567. As stated in the February 16, 2017 order:

> [T]he facts establish that FCB waived its right to collect default interest under the Note and Loan Agreement. First, when asked to provide an estimated payoff amount, FCB quoted an amount that did not include default interest. Second, and more significant, the Loan Schedule and Payment History that FCB provided to [Appellant] show that, during the time it held the Note, FCB did not take the position that it was owed default interest. . . . [H]ad FCB claimed entitlement to default interest, it would not have applied a portion of the Debtor's monthly payments to reduce the Note's principal balance. Rather, FCB's records would have indicated that the principal balance had increased, because the Debtor's payments were insufficient to cover interest at the default rate, let alone reduce the principal balance. The Loan Schedule and Payment History show that FCB, which knew the Debtor was in default, relinquished its right to collect default interest.

R3 566.

The order also denied Appellant's claim for attorney's fees or costs incurred after December 31, 2016, because that would require a second amendment to Appellant's proof of claim. The order concluded that this would not be permitted, because it "would prejudice the Debtor and the estate." R3 554-555. As the order explained:

> The amount of attorneys' fees allowable in connection with [Appellant]'s claim has been at issue since the Debtor objected to the claim on December 14, 2016. Being well aware that the Debtor vigorously disputed the allowability of its attorneys' fees, [Appellant] should have included the post-2016 fees in the First Amended Proof of Claim and Opposition filed on January 16, 2017. Information on the fees was in B3's possession2; the only thing [Appellant] did not know was how much time its counsel would spend (1) attending the hearing on the Disallowance Motion and (2) reviewing the Debtor's Reply to [Appellant]'s Opposition. But the fees that would be incurred in connection with these tasks would have been easy to approximate.

R3 554.

As noted earlier, on March 2, 2017, Appellant moved to reconsider this order so that it would include the amount of default interest as well as the requested attorney's fees and costs. R3 575-601. Appellant argued that failure to grant this relief would cause manifest injustice resulting from prior erroneous

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-02730 JAK<br>LA BK15-27769 ER | | Date | October 20, 2017 |
|---|---|---|---|---|
| Title | In re Crystal Waterfalls, LLC dba Park Inn By Radisson:<br>B3 Capital Venture, LLC v. Crystal Waterfalls, LLC | | | |

conclusions of law and fact. R3 578-593. Appellant also argued that it was not bound by any waiver made by FCB, because it had acquired the Note as a holder in due course. R3 586. This motion was not opposed. On March 27, 2017 the Bankruptcy Court denied the motion. R3 611-625. Appellant then initiated these appellate proceedings. Dkt. 1.

### III.     Analysis

####       A.     Legal Standards

In an appeal from an order of a bankruptcy court, conclusions of law are reviewed de novo and findings of fact are reviewed for clear error. *Blausey v. United States Tr.*, 552 F.3d 1124, 1132 (9th Cir. 2009) (citing *In re Salazar*, 430 F.3d 992, 994 (9th Cir. 2005)). The clear error standard is "significantly deferential, requiring a definite and firm conviction that a mistake has been committed before reversal is warranted." *United States v. Bourseau*, 531 F.3d 1159, 1164 (9th Cir. 2008) (quotations omitted). A district court may affirm on any ground supported by the record. *Thrifty Oil Co. v. Bank of Am., Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003); *In re DeMasi*, 227 B.R. 586, 587 (D.R.I. 1998) ("[T]his Court is not bound to remain within the confines of the Bankruptcy Court's reasoning for its decision, but is free to affirm the decision below on any ground supported by the record.").

####       B.     Application

#####              1.     Whether FCB Waived Its Right to Collect Default Interest

Appellant argues that the Bankruptcy Court erred in determining that it was not entitled to collect default interest that had accrued prior to its acquisition of the Note from FCB in November 2015. Appellant argues that this decision was based on an erroneous finding that FCB had waived its right to collect default interest for that time. Appellant argues that this finding resulted from both an error of law as to waiver and an error of fact as to whether a waiver had occurred.

#####                     a)     Legal Standard for Waiver

"[A] party to a contract may by conduct or representation waive the performance of a condition thereof, or be held estopped by such conduct or representations to deny that he has waived such performance." *Panno v. Russo*, 82 Cal. App. 2d 408, 412 (1944).

> Case law is clear that waiver is the intentional relinquishment of a known right after knowledge of the facts. The burden is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and doubtful cases will be decided against a waiver.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-02730 JAK<br>LA BK15-27769 ER | | Date | October 20, 2017 |
|---|---|---|---|---|
| Title | In re Crystal Waterfalls, LLC dba Park Inn By Radisson:<br>B3 Capital Venture, LLC v. Crystal Waterfalls, LLC | | | |

*Waller v. Truck Insurance Exchange, Inc.*, 11 Cal. 4th 1, 31 (1995) (citations omitted).

        b)      Application

Whether conduct constitutes a waiver of a contractual right presents factual questions. *Gould v. Corinthian Colleges, Inc.*, 192 Cal. App. 4th 1176, 1179 (2011). Therefore, the factual basis for the finding that FCB waived default interest is reviewed for clear error.

The finding of waiver was based on three principal facts. *First,* in November 2015, FCB provided an estimated payoff amount for the Note that was based on the Contract Rate of interest, not the Default Rate. In the proceedings before the Bankruptcy Court, evidence was presented that this estimate was identified as a "preliminary figure for reference only," rather than a final statement of the amount owed. R3 606; R1 56-58. However, the Bankruptcy Court determined that this was not sufficient to warrant a conclusion that there had been no waiver. On the contrary, it found that, by informing Debtor of an amount owed based on the Contract Rate, FCB expressed an intention not to collect default interest for the period of its ownership of the Note, thereby forgoing any such right.

*Second*, the PSA supports a finding that FCB had relinquished its right to collect default interest. The PSA provided that "the statement of the principal balance and accrued and unpaid interest for the Loan set forth on Exhibit A [the Loan Schedule], attached hereto, is true and correct as of the Calculation Date." R2 405. The Loan Schedule stated that $385,533 in unpaid interest was owed as of November 17, 2015, which was three days prior to the filing of this bankruptcy proceeding. R2 414. The Bankruptcy Court made the factual determination that this figure "reflects interest calculated at the non-default rate." R3 614. It is substantially less than the $1.1 million in interest that Appellant seeks to recover.

*Third*, FCB provided Appellant with a Loan Payment History pursuant to the PSA. It shows that FCB continued to accept monthly interest payments from Debtor at the non-default rate from December 2011 to the time the Note was transferred. R1 143. This showed that FCB had applied some of Debtor's monthly payments to the principal balance on the Note. This led to the finding by the Bankruptcy Court that the "Loan Schedule and Payment History show that FCB, which knew the Debtor was in default, relinquished its right to collect default interest." R3 614.

In light of these facts, the Bankruptcy Court found that it would be inappropriate and unconscionable to allow collection by Appellant of Default Interest starting in December 2011. *See* R2 460-461 (citing *In re Sweet*, 369 B.R. 644, 650-52 (Bankr. D. Colo. 2007) (assignee of debt "may not retroactively substitute his discretion for that of [the previous note holder] in order to apply default interest" from the date upon which a default first occurred)); *In re Lichtin/Wade, LLC*, No. 12-845-8-RDD, 2012 Bankr. LEXIS 3642, at *13 (Bankr. E.D.N.C. 2012) ("[B]ecause the original loan holder, BB & T, did not express an intent to charge default interest on the date of maturity, the assignee, ERGS, cannot retroactively substitute its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-02730 JAK<br>LA BK15-27769 ER | Date | October 20, 2017 |
| Title | In re Crystal Waterfalls, LLC dba Park Inn By Radisson:<br>B3 Capital Venture, LLC v. Crystal Waterfalls, LLC | | |

judgment for that of BB & T.")).

Appellant argues that this action is distinguishable from these cases because "in those cases the contracts provided for an optional exercise of a default provision whereas in this case the default interest provision is triggered automatically upon a default." Dkt. 10 at 32. Further, the Loan Agreement does not have any term that expressly requires FCB or its successors to declare a default – or otherwise exercise an option to place Debtor in default – as a condition imposing the increase in the interest rate to the higher, default level. R1 7-16. Instead, it states that "upon default, the interest rate on this Note shall . . . immediately increase by adding an additional 5.000 percentage point margin." R1 14.

Appellant also identifies other terms of the Loan Agreement that weigh against a finding of waiver here. They include language that inaction by FCB (or its successors) will not be construed as a waiver of its rights. Thus, the Business Loan Agreement states FCB "shall not be deemed to have waived any rights . . . unless such waiver is given in writing and signed [by FCB]" and that "no delay or omission on the part of [FCB] in exercising any right shall operate as a waiver of such right or any other right." R1 8, 11. In addition, the Note provides that FCB "may delay or forgo enforcing any rights or remedies . . . without losing them." R1 15. Therefore, unlike in certain of the cases cited by the Bankruptcy Court, mere delay in seeking default interest is not enough to support a finding of waiver here.

Appellant argues that this case is similar to *LaGrange Ventures, LLC v. Wells Fargo Bank, N.A.*, No. 15 C 7922, 2016 WL 8711597 (E.D. Ill. July 22, 2016). There, the lender continued to accept payments at a non-default rate of interest for six months after default on a promissory note was entered. *Id*. at *1. The debtor then ceased to make payments on the note, and the lender initiated judicial foreclosure proceedings. Once again, it did not seek to impose the default rate of interest. *Id*. During the pendency of those foreclosure proceedings, the lender assigned the note to Wells Fargo, which moved for summary judgment and sought interest at the default rate commencing from the date of default. *Id*. The court granted this motion. *Id*. In subsequent Chapter 11 proceedings initiated by the borrower, the bankruptcy court upheld Wells Fargo's claim for default interest. *Id*. On appeal, the court found that the fact that the lender had not sought default interest in the judicial foreclosure action, and during the preceding months, was insufficient to show that it intended to waive its right to impose the higher interest rate after the default, stating that "more is required under the contract to extinguish the lender's contractual default rights. *Id*. at *2.

*LaGrange*, which is not controlling, is also distinguishable. Here, FCB had a right to collect default interest immediately upon default. However, notwithstanding its right to do so, it did not declare a default in December 2011. Furthermore, even after the default was declared, FCB did not charge Debtor default interest for an entire year, and made affirmative representations to Debtor and to Appellant that such interest was not owed. Therefore, even there was a default in December 2011, FCB's subsequent conduct, as well as its representations to Appellant in connection with the PSA, demonstrates an intention to waive the right to collect such interest.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-02730 JAK<br>LA BK15-27769 ER | | Date | October 20, 2017 |
|---|---|---|---|---|
| Title | In re Crystal Waterfalls, LLC dba Park Inn By Radisson:<br>B3 Capital Venture, LLC v. Crystal Waterfalls, LLC | | | |

This result is not in conflict with the contractual terms providing that a delay in enforcement does not constitute waiver. As the Bankruptcy Court noted, non-waiver clauses may themselves be waived, when enforcing them would be inappropriate or unconscionable. *See Auntie Anne's, Inc. v. Wang*, No. CV 14-01049 MMM (EX), 2014 WL 11728722 (C.D. Cal. July 16, 2014) (citing cases); *Gould*, 192 Cal. App. 4th at 1180. Here, FCB did not just delay or fail to exercise any right to the Default Rate once the default was entered. Rather, FCB elected not to declare that Debtor was in default until December 2014, when it recorded the Notice of Default. R3 613. Furthermore, FCB affirmatively elected to forgo the application of the Default Rate after filing the Notice of Default and informed the Debtor of this decision.

When viewed as a whole, the facts presented to the Bankruptcy Court were sufficient to support its finding of waiver by FCB.

    2.    <u>Whether Appellant Was Bound by the Waiver by FCB</u>

        a)    Legal Standard

Under the California Commercial Code, an entity that acquires a debt as a "holder in due course" is authorized to collect the full amount of that debt as provided for in the underlying promissory note. If a party is a holder in due course, it takes the instrument free from other claims, and is not subject to certain defenses by the obligor, as defined in Cal. Com. Code § 3305. Thus,

> [a] holder who takes [an instrument] (that is regular on its face) for value, in good faith, and without notice of certain defects or defenses, becomes a holder in due course. The right of a holder in due course to enforce [an instrument] is not subject to most defenses, even if the defenses might have been good against the payee. Thus a holder in due course may obtain better rights in [an instrument] than its predecessor.

*In re McMullen Oil Co.*, 251 B.R. 558, 567 (Bankr. C.D. Cal. 2000); *see, e.g., Flores v. Woodspecialties, Inc.*, 138 Cal. App. 2d 763, 769 (1956) (stating rule).

A holder in due course is defined as one that

> took the instrument (A) for value, (B) in good faith, (C) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series . . . .

Cal. Comm. Code § 3302(a)(2); *see also* UCC § 3308(b) (defining holder in due course).

Cal. Comm. Code § 3-304(b) defines "overdue." It states that "[i]f the principal is payable in installments

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-02730 JAK<br>LA BK15-27769 ER | | Date | October 20, 2017 |
|---|---|---|---|---|
| Title | In re Crystal Waterfalls, LLC dba Park Inn By Radisson:<br>B3 Capital Venture, LLC v. Crystal Waterfalls, LLC | | | |

and a due date has not been accelerated, the instrument becomes overdue upon default under the instrument for nonpayment of an installment, and the instrument remains overdue until the default is cured." Cal. Comm. Code § 3-304(b)(1).

"Unless the due date of principal has been accelerated, an instrument does not become overdue if there is default in payment of interest but no default in payment of principal." Cal. Comm. Code § 3-304(c). But "if a due date with respect to principal has been accelerated, the instrument becomes overdue on the day after the accelerated due date." Cal. Comm. Code § 3-304(b)(3).

      b)      Application

In support of the Motion for Reconsideration, Appellant argued that it was a holder in due course, as defined under Cal. Com. Code § 3302. It claimed to have acquired the Note for value, relied on representations by FCB that no controversy existed as to its right to collect all amounts due on the Note, and conducted reasonable due diligence to determine that there was no controversy as to the amounts owed as of that time. R3 586. Therefore, Appellant argued that its acquisition of the Note was "free of any defenses to payment Debtor may have against [FCB]." *Id.*

The Bankruptcy Court denied the Motion for Reconsideration on this ground, stating:

> To qualify as a holder in due course, [Appellant] was required to take the Note "without notice that the instrument is overdue." Cal. Comm. Code §3-302. An instrument where principal must be paid in installments, such as the Note, "becomes overdue upon default under the instrument for nonpayment of an installment, and the instrument remains overdue until the default is cured." Cal. Comm. Code §3-304(b)(1). Here, the Note became overdue when the Debtor failed to make the installment payment that was due on December 23, 2014. The Note remained overdue until the date B3 acquired it, as the Debtor did not make any payments between December 3, 2014, and the date of B3's acquisition. When acquiring the Note, B3 knew that it was overdue, because FCB provided B3 a payment history showing that the Debtor had made no payments on the Note subsequent to December 3, 2014.

R3 621.

To qualify as a holder in due course, an assignee must take possession of a note "without notice that the instrument is overdue." Cal. Comm. Code § 3-302(a)(2). Appellant argues that this provision does not apply in light of Cal. Comm. Code § 3-304(c). That section provides that "[u]nless the due date of principal has been accelerated, an instrument does not become overdue if there is default in payment of interest but no default in payment of principal." Appellant notes that the Loan Agreement required that payments be applied to interest and costs before being applied to principal. *See* R1 14. Appellant argues that "the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-02730 JAK<br>LA BK15-27769 ER | | Date | October 20, 2017 |
|---|---|---|---|---|
| Title | In re Crystal Waterfalls, LLC dba Park Inn By Radisson:<br>B3 Capital Venture, LLC v. Crystal Waterfalls, LLC | | | |

payments missed for about a year failed to exhaust the accumulating regular and default interest on the compounded indebtedness, much less the backlog of five years of unpaid default interest." Dkt. 10 at 30. Because only interest payments were overdue on the Note, and not the payment of principal, Appellant argues that the Note was not "overdue" as defined by the Commercial Code.

Debtor responds that the Note was overdue under the statute because the due date had been accelerated. As noted, a Note may be treated as overdue, regardless of whether the unpaid amounts concern principal, if it has been accelerated. Cal. Comm. Code § 3-304(c). "Acceleration" refers to "[t]he advancing of a loan agreement's maturity date so that payment of the entire debt is due immediately." Black's Law Dictionary (10th ed. 2014). Here, it is undisputed that Appellant purchased the Note on November 17, 2015, when it had notice that Debtor was delinquent and that a trustee's sale had been scheduled for November 20, 2015. R3 621; R1 39. Debtor argues that these facts show that the due date for the Note was accelerated, because the time for repayment had been moved up. Debtor made no payments of principal after the default was declared in December 2014. R3 612. These facts are sufficient to show that the due date for the Note had been accelerated, that Debtor was in default, and that the default had not been cured. It is undisputed that Appellant had been notified of these facts at the time that it acquired the Note. As such, the determination by the Bankruptcy Court was not in error under the governing standard.

Furthermore, as Debtor argues, whether Appellant was a holder in due course is not tied to a determination of its right to recover interest at the Default Rate subsequent to its purchase of the Note. Appellant has cited no authority that would support the proposition that a holder in due course is exempt from the effect of its predecessor's waiver of the recovery of interest during a period of default. Although a holder in due course is not subject to certain affirmative defenses, no case has been cited, and the Court has found none, that a holder in due course may retroactively reinstate rights to collection that have been waived by its predecessor in interest. To allow such a remedy would conflict with the general rule that an assignee holds no rights that are greater than those previously held by the assignor. *See, e.g.*, *Casiopea Bovet, LLC v. Chiang*, 12 Cal. App. 5th 656, 663 (2017). Thus, even if Appellant is deemed a holder in due course, it would not be entitled retroactively to declare that Debtor was in default in December 2011, thereby vacating and reversing the prior waiver of that default by FCB. Instead, Appellant could not declare Debtor in default until a time that was after it acquired the Note. Appellant instead sought to declare that the Debtor had defaulted almost four years prior to that time. The Bankruptcy Court did not err in finding that this attempt was not permitted.

      3. <u>Whether Appellant May Recover Attorney's Fees and Costs Incurred After December 31, 2016</u>

          a) Legal Standards

Pursuant to 11 U.S.C. § 502(a), a proof of claim is deemed prima facie evidence of its validity and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-02730 JAK<br>LA BK15-27769 ER | Date | October 20, 2017 |
| Title | In re Crystal Waterfalls, LLC dba Park Inn By Radisson:<br>B3 Capital Venture, LLC v. Crystal Waterfalls, LLC | | |

amount, so long as it sets forth "facts sufficient to support a legal liability to the claimant." *In re King St. Investments, Inc.*, 219 B.R. 848, 858 (B.A.P. 9th Cir. 1998); *see also* FRBP 3001(f) (stating rule). A debtor may rebut the prima facie showing by presenting "facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claims themselves." *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991) (citations omitted). If a debtor does so, "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Consolidated Pioneer Mortg.*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) (citations omitted).

    b)  Application

Appellant's proof of claim, which was filed on October 31, 2016, sought an award of costs and attorney's fees totaling $180,000. R1 4. However, no documents supporting these amounts were attached to the proof of claim. Debtor objected to the claim on that ground. Thereafter, Appellant provided supporting documents, including those supporting the amount of attorney's fees and costs that had been incurred by Appellant as of the time that the Debtor filed its Petition in this matter. However, Appellant did not present documents from which a calculation could be made or confirmed as to the attorney's fees and costs that that would be incurred after the date on which the Petition was filed. On December 19, 2016, Debtor filed a Claim Objection that sought to disallow the portions of the claim that sought such post-Petition expenses. R1 47-49.

As noted, upon the filing of the Claim Objection, the burden shifted to Appellant to provide evidence showing the validity of its claim. Appellant filed an Amended Proof of Claim on January 16, 2017. However, no invoices were attached in support of Appellant's eligibility to claim post-Petition legal expenses. R2 320-364. Furthermore, the Amended Proof of Claim did not state any estimate of the fees that were expected to be incurred thereafter in these proceedings, including with respect to the January 25, 2017 hearing on Debtor's Claim Objection.

The Bankruptcy Court found that Appellant was only entitled to the amounts of attorney's fees and costs based on what had been presented in the Amended Proof of Claim. This excluded claims for expenses incurred after December 31, 2016. As stated in the order denying Appellant's Motion for Reconsideration, this decision was based on Appellant's failure timely to seek such fees in its Amended Claim. R3 621-622. That order also concluded that to allow Appellant to claim additional fees and costs would be prejudicial to the bankruptcy estate and other creditors, because it would require additional costly litigation that reasonably could have been avoided. R3 621. This determination was informed by Appellant's failure to file a timely and complete claim as well as the need to allow the Debtor to file a corresponding reply following the January 25, 2017 hearing.

Appellant argues that the Bankruptcy Court erred by finding that Debtor would suffer prejudice if Appellant were allowed to make an additional amendment to its proof of claim. It contends that there was not sufficient evidence of such prejudice. Appellant notes that, in general, a liberal standard applies to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-02730 JAK<br>LA BK15-27769 ER | Date | October 20, 2017 |
| Title | In re Crystal Waterfalls, LLC dba Park Inn By Radisson:<br>B3 Capital Venture, LLC v. Crystal Waterfalls, LLC | | |

determining whether an amendment to a proof of claim should be permitted when the purpose of the proposed amendment is to update a claim as to amounts that had accrued or were incurred after the prior version was filed. *See In re Sambo's Restaurants, Inc.*, 754 F.2d 811, 816-17 (9th Cir. 1985) (observing a "long-established liberal policy toward amendment of proofs of claim").

Debtor's Claim Objection, which was filed December 19, 2016, challenged Appellant's right to recover post-Petition legal expenses. This was sufficient to put Appellant on notice that its claim for the recovery of such expenses was at issue. Notwithstanding this notice, Appellant failed to seek expenses incurred after December 31, 2016, in its Amended Claim. As the Bankruptcy Court noted, "[b]eing well aware that Debtor vigorously disputed the allowability of its attorneys' fees," Appellant "should 'have included the post-2016 fees in the First Amended Proof of Claim and Opposition filed on January 16, 2017.'" R3 622. Appellant could have done so, inasmuch as a substantial portion of the fees were incurred in connection with the First Amended Claim, and their amount would have been known as of the time that it was filed. Further, to the extent that additional fees would be incurred in connection with the January 25, 2017 hearing, the First Amended Claim could have requested their award, based on a post-hearing submission as to their amount.

The Bankruptcy Court did not abuse its discretion in refusing to allow a second amended claim. *See In re Roberts Farms Inc.*, 980 F.2d 1248, 1251 (9th Cir. 1992) ("The decision to allow an amendment to a timely filed proof of claim is within the sound discretion of a bankruptcy court, and we therefore review it for an abuse of discretion."). The factors to be considered in making such a determination include whether other claimants might be prejudiced, and whether there is evidence of bad faith or unreasonable delay by the claimant. *See In re Wilson*, 96 B.R. 257, 262 (B.A.P. 9th Cir. 1988). Here, the Bankruptcy Court acted well within the scope of its discretion in determining that a second amended claim was unwarranted, and would prejudice both Debtor and the estate. As the Bankruptcy Court explained:

> Permitting [Appellant] to amend its claim a second time would prejudice the Debtor and the estate. As noted, the Court has already permitted [Appellant] to amend its proof of claim once. Rather than including all the information in its possession regarding attorneys' fees in its First Amended Proof of Claim, [Appellant] omitted some of the information and now seeks leave to amend its claim a second time. That is the textbook definition of unreasonable delay. The delay prejudices the estate and other creditors, whose recovery will be diminished by the estate's likely incurrence of additional costs litigating the allowability of the additional amounts claimed by [Appellant]. This additional litigation could have been avoided had [Appellant] properly included its post-2016 fees in its First Amended Proof of Claim.

R3 555.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-02730 JAK<br>LA BK15-27769 ER | Date | October 20, 2017 |
|---|---|---|---|
| Title | In re Crystal Waterfalls, LLC dba Park Inn By Radisson:<br>B3 Capital Venture, LLC v. Crystal Waterfalls, LLC | | |

This reasoned statement shows that the Bankruptcy Court had adequate grounds to deny Appellant leave to file a second amended claim. Therefore, it did not abuse its discretion in doing so. Nor is there any showing that this decision effected a denial of Appellant's due process rights. Appellant argues that the decision of the Bankruptcy Court violated its rights to due process. It contends that it did not receive adequate notice that its fees and costs incurred after December 31, 2016 could be excluded. It also contends that it was not provided with a sufficient opportunity to present arguments in support of the timeliness and propriety of the additional requested fees. These claimed procedural violations were the product of Appellant's own lack of diligence. It could have filed a complete claim initially. As noted, its First Amended Claim could have included a request for an award of fees incurred in 2017. Having provided Appellant with two opportunities to present its claim, there was no abuse of discretion or denial of due process in denying a third one.[2]

## IV.  Conclusion

For the foregoing reasons, the decision of the Bankruptcy Court is **AFFIRMED.**

**IT IS SO ORDERED.**

cc:  Ernest M. Robles, United States Bankruptcy Judge

|  | : |
|---|---|
| Initials of Preparer | ak |

---

[2] Appellant also argues that certain statements made by the Bankruptcy Court during the January 25, 2017 hearing on Debtor's Motion to Exclude led Appellant to believe that this issue would not be addressed in the final order on that Motion. Dkt. 10 at 35. In responding to comments by Appellant's counsel regarding fees and costs, the Bankruptcy Court stated "[t]hat's not an issue for today," and noted that the matter was under submission. R3 599. Even if this brief and somewhat ambiguous remark were interpreted in the manner proposed by Appellant, it would not have precluded the Bankruptcy Court from reviewing the issue again during its consideration of the submitted matter.